Marty O'Toole (SBN: 163651)
LAW OFFICES OF MARTY O'TOOLE
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: (310) 888-4000
Facsimile: (310) 356-4688
Marty@LawOfficesofMartyOToole.com

Attorney for Plaintiff EMIL CADKIN and
EMIL AND LILA CADKIN and
The CADKIN TRUST

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIL CADKIN, an individual, and EMIL and LILA CADKIN as Trustees of the Cadkin Trust, <br><br> Plaintiffs, <br><br> vs. <br><br> LEORA BLUESTONE, THE ESTATE OF HARRY BLUESTONE, THE BLUESTONE TRUST, TREVOR THORTON, CB MUISC, CARLIN PRODUCTION MUSIC, CALBERT MUSIC, BROADCAST MUSIC, INC, AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS; and DOES 1 through 10, inclusive; <br> Defendants. | Case No. CV06-0034 ER (CWx) <br><br> **NOTICE OF MOTION AND MOTION TO VACATE AND SET ASIDE THE AWARD OF ATTORNEYS' FEES DUE TO SUSTAINED FRAUD UPON THE FEDERAL COURTS BY ATTORNEY STEPHEN R. MICK [FRCP 60 (b)]** <br><br> **DECLARATION OF MARTY O'TOOLE** <br><br> DATE:        June 27, 2011 <br> TIME:        10:00 a.m.        . <br> CRTROOM:   TBD <br> JUDGE:       TBD |

TO DEFENDANTS AND THEIR ATTORNEY OF RECORD HEREIN:

PLEASE TAKE NOTICE that on the June 27, 2011 at 10:0 a.m., in Courtroom

Number: TBD, located at 255 East Temple Street, Los Angeles, CA 90012, Plaintiffs,

1

will and hereby does move pursuant to the inherent powers of the court and under Federal Rules of Civil Procedure 60 (b)] 6 to vacate and set aside the judgment based upon granting of attorneys' fees to Defendants Carlin Production Music and Carbert Music under the Copyright Act because of fraud upon the court by said defendants and their counsel, Stephen R. Mick.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities and the Declaration of Marty O'Toole filed herewith and upon the papers, records and pleadings on file herein and all matters as may be judicially noticed by the Court, and such oral and documentary evidence as may be permitted at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place between May 27-June 1, 2011.  See Declaration of Marty O'Toole, attached hereto, ¶

Dated:  June 1, 2011

\S\

Marty O'Toole
Law Office of Marty O'Toole

2

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

## MEMORANDUM OF POINTS AND AUTHORITIES

### Background

In 2005, Emil Cadkin, 90, a music composer, filed a state court complaint against Defendants Carlin Production Music and Carbert Music ("Defendants"), after first writing to Carlin Production Music and Carbert Music in an effort to stave off litigation.

Without first being served with this state court complaint, Stephen R. Mick, along with associates of his then-law firm Akin Gump Straus Hauer & Feld removed the state court complaint to federal court under the Copyright Act.  Mr. Mick, and associates, would continue to represent to the district court, and then to the Ninth Circuit, on appeal, that Defendants possessed copyright ownership in musical works that had actually fallen into the public domain decades earlier.

This false fiction would be maintained throughout the pendency of the suit, including when Mr. Mick sought an award of his attorneys' fees, under the Copyright Act:

> "Defendants were forced to expend significant time and money to protect their lawfully obtained right to license and distribute this music against a fraudulent claim of ownership.  It is entirely consistent with the purposes of the Copyright Act to protect the lawful owners and to strongly discourage invalid claims. For those reason, Defendants respectfully request that this Court award them attorneys' fees pursuant to 17 U.S.C. §505 in the amount of $129,830."
> Motion By Stephen R. Mick on behalf of Defendants Carlin Production Music

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

and Carbert Music for an Award of Attorneys' Fees,  Pg. 4, Lns. 12-17.
Declaration of Marty O'Toole, ¶6, Exhibit B.

This appears to be quite compelling, and, indeed, was apparently relied upon when the district court awarded over $116,000 in attorney's fees, except that it was not true.   The public –not Defendants --were the "lawful owners" –and it is simply inconceivable that Mr. Mick did not know this critical fact when he made these and other similar representations to the court.   Indeed, Mr. Mick told the district court that the actual attorneys' fees and costs of that action were "$150,000" but that he removed "expenses associated with third-party title researchers and investigators" Motion By Defendants Carlin Production Music and Carbert Music for an Award of Attorneys' Fees, Pg. 8 Lns 5-6. Declaration of Marty O'Toole, ¶6, Exhibit B.    Surely, these title researchers and investigators—would have discovered that there had been *no renewals*—thus, no copyright ownership.

To establish his credentials and to bolster his representations to the court when seeking attorneys' fees, Mr. Mick declared:  "My practice is substantially devoted to intellectual property litigation. I was awarded ASCAP's national prize in copyright law upon my graduation from law school, and have litigated copyright actions for almost twenty years.  I have obtained successful defense judgments in copyright actions multiple times, and have had those judgments affirmed in the courts of appeal."

This is quite impressive, and likely gave authority to the sizable award of attorneys fees, but it also strongly suggests that Mr. Mick would have known early on that the very copyright works that Mr. Mick was adamantly claiming were owned by his clients, were ***not*** *owned by his clients*.

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

And Mr. Mick was quite adamant in his (mis)representations.  He would label the state court claims made by Mr. Cadkin as  "brazen" -- and demand the court award his attorneys' fees to be paid because he was on the side of the "rightful owners" under the Copyright Act.  Mr. Cadkin, Mr. Mick would label a "serial misuse(r) of the court system" when, it turns out, it was Mr. Mick's representations of "rightful owners" that was false it was he, Mr. Mick, who was the serial "misuser" of the court.

My Mick wrote in his Reply to the Opposition to Attorneys' Fees:  "Here, Defendants were not merely accused infringers—they were the rightful owners of the music.  It is difficult to conceive of a defense that is more consistent with the purposes of the Copyright Act that a rightful titleholder's defense of a meritless claim against his rights."   Reply P2.  Lns12-15  Declaration of Marty O'Toole, ¶6, Exhibit B.

However, this statement was manifestly untrue when written.

Mr. Mick would slyly castigate and upbraid Mr. Cadkin for not determining his ownership rights while at the same time repeatedly vouching that his client was the true and rightful owner of the copyright and, as such, entitled to the sizable fees.    For example, "Defendant Carlin is actually the rightful owner. . ." Page 1, Ln. 12, Introduction, Motion for an Award of Attorneys' fees pursuant to U.S.C.  §505; and "[D]efendants have prevailed in what is properly styled as a copyright infringement action, and they should be awarded reasonable attorneys fees consistent with the Copyright Act.". Declaration of Marty O'Toole, ¶ 6, Exhibit B.

Mr. Mick seemed to be saying: "How dare you imposter lay claim to our copyrights! -- This court *must deter* such manifestly improper conduct against we the true copyright owners --while all the while shielding the truth from the court who the true imposter actually was.  Mr. Mick *simply had to have known* that his claims of

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

"rightful ownership" under the Copyright Act were false and misleading—as *these very copyrights* had fallen into the public domain.

And it worked.  The district court awarded attorneys fees in the amount of $116,086.50 finding Plaintiffs' were not copyright owners and completely unaware, from the false representations made, that Defendants –who had removed the matter from state court to federal court under the Copyright Act--similarly lacked copyright ownership.   Declaration of Marty O'Toole, ¶6, Exhibit B.

Upon appeal before the Ninth Circuit, Mr. Mick would continue with his approach of forcefully --if fraudulently, claiming copyright ownership.  In Appellee's Answering Brief, Mr. Mick wrote:  "Plaintiff Cadkin did not, in fact, own the copyrights in the music he claimed.  He had sold them-twice-to others, long before filing this litigation. Defendant Carlin is actually the rightful owner by acquisition from Leora Bluestone, who bought the rights from Cadkin in 1958."  Not so.  *Carlin* had long before filing of this litigation, lost its rights in the music at issue, thus, they were not the "rightful owner."  Declaration of Marty O'Toole, ¶6 , Exhibit B.

In this same Answering Brief, Mr. Mick would lay it on thick.  "As the district court determined, the gravamen of plaintiffs claims, by law, was always a matter of copyright infringement, regardless of how the [state court] complaint was styled. Defendants were forced to expend significant time and money to protect their lawfully obtained right to license and distribute this music against a fraudulent claim of authorship.  It is entirely consistent with the purposes of the Copyright Act to protect the rights of lawful owners and to strongly encourage invalid claims."  Appellee's Answering Brief, Page 3, Par. 2.  [Declaration of Marty O'Toole ¶6, Exhibit  B]

Well spoken, quite forceful, if manifestly untrue.   Defendants were *not* the rightful copyright owners when Mr. Mick made these representations.

In addition, Mr. Mick wrote, "Defendant Carlin purchased the copyrights to the music in the C&B Music Library from the Bluestones in 1999" -- when this library, or large parts of it, had slipped into the public domain on or around 1986.  There would, then, be no copyright to purchase.  Throughout this Answering Brief, Mr. Mick would seek to inject other cases and misstate facts and events, apparently to mislead the court into believing that Mr. Cadkin was employing bad faith litigation, when it was always Mr. Mick who was doing so (and Mr. Cadkin mostly seeking to have mention of his death corrected, while he was alive, and to have compositions correctly credited. *This is precisely why Mr. Cadkin initially filed in state* court not federal court.)  It was *Mr. Mick* who first styled the case one of federal copyright infringement, claiming his clients were the true copyright owners, when they were not. It was an astounding, sustained, fraud on one court after another, from someone who undoubtedly knew better.

[Similarly, Mr. Mick has consistently <u>lied</u> in the federal courts as to why he had failed to hand over purchase documents.  The three-judge panel of the Ninth Circuit sought to learn from him what had happened at a meeting at his office where these documents were supposed to be provided but were not.  Mr. Mick, after pausing nervously, said, "I don't know."  That he did not know what happened in his office on a central event of the case—and a focal point of the appeal, stretches credulity.  He was simply lying to the Ninth Circuit.  Cornered, Mr. Mick would trick the court into thinking that Mr. Cadkin was working with "cohorts" to "extort" money from his clients through a series of <u>five</u> burdensome lawsuits.  There was, of course, no evidence before the court of any "cohorts" –or even collusion, and the five lawsuit

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

were at most one (or perhaps two –including the one that Mr. Mick had removed to federal court -- before his clients had even been served.[1]]

It was not until April 7, 2011, while meeting and conferring on a state court matter concerning Mr. Mick and defendants Carlin Production Music and Carbert Music's failure to so much as acknowledge partial or full satisfaction of judgment, that Mr. Mick let slip that there had been no renewal of the 1950s copyright registration as is required 28 years later, and, as such, this music had been in the public domain since the 1980s.  Stunningly, Defendants did not have a copyright interests in the music at issue as they had long claimed.   Declaration of Marty O'Toole, ¶3-4.

Mr. Mick, in this April 7, 2011 phone conversation, said that there were original registrations for "about half," but when asked about the renewals that were required to maintain copyright ownership, Mr. Mick paused and eventually answered with a question: "You know what occurs if there is no renewal?" (or similar words).  To which opposing counsel, Marty O'Toole, volunteered: "public domain."   "Public Domain," Mr. Mick ominously echoed, before going on to say that if Emil Cadkin wanted to contact BMI and alert them that he had no rights in the monies he was receiving quarterly, that was on him. Declaration of Marty O'Toole, ¶3-4.

If there was any doubt that Mr. Mick knew full well the gravity of what he was saying, it was displayed by his follow-up comments about the severe ramifications of works falling into the public domain.  Mr. Mick was apparently a bit loose lipped in this conversation because of his apparent mistaken belief that statute of limitations would bar a court from correcting fraud on the court.

---

[1] The oral argument before the Ninth Circuit may be heard at:
http://www.ca9.uscourts.gov/media/view_subpage.php?pk_id=0000000371

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

Mr. Mick placed a levy on Mr. Cadkin's BMI quarterly residual payments; approximately $18,000 is presently left from the instant award of attorneys' fees.

## STANDARD TO VACATE, SET ASIDE OR MODIFY AWARD OF ATTORNEYS' FEES

The power to vacate a judgment that has been obtained by fraud on the court is inherent in courts. *Universal Oil Products Co. v. Root Ref. Co*., 1946, 66 S.Ct. 1176, 1179. "The spirit of 'fraud upon the court' rule is applicable whenever the integrity of the judicial process or functioning has been undercut—certainly in any instance of misconduct by a party." *Greater Boston Television Corp. v. FCC*. C.A.D.C.1971, 463 F. 2d 268, 278.

A court has the inherent power to inquire into the integrity of its own judgments and to set them aside when fraud or corruption of its officers has been shown. *Chicago  Title & Trust Co. v. Fox Theaters Corp.*, D.C.N.Y. 1960, 182 F. Supp. 18, 38.  And, as such, "a decision produced by fraud on the court is not in essence a decision at all and never becomes final."   11 CHARLES ALLEN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE, §2870.

In addition, Federal Rule of Civil Procedure Rule 60(b)(6) provides, in relevant part that "[o]n motion and upon such terms as may be just, the court may relieve a party . . .from a final judgment, order, or proceeding for . . .any reason justifying relief from the operation of the judgment." Fed. R.Civ.P.60(b)(6).  "Rule 60(b)(6) does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *United States v. Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996) (citation omitted).  Accordingly, a motion made under Rule 60(b)(6) is addressed to the trial court's discretion, which is

9

"especially broad" given the underlying equitable principles involved.  Cf. *Overbee v. Van Waters & Rogers*, 765 F. 2nd 578, 580 (6th Cir. 1985); *Matter of Emergency Becon Corp*. 666 F. 2.d 754, 760 (2nd 754, 760 (2nd Cir. 1981).  Rule 60 (b) is meant to be remedial in nature and therefore must be liberally applied.  See *Butner v. Nuestadter*, 342 F.2d 783 (9th Cir. 1963).

In a corollary intellectual property case, *Hazel-Atlas Glass Company v. Hartford Empire Company* (1944) 64 S.Ct. 997 the U.S. Supreme Court held that the fraud discovered there demanded "the exercise of the historic power of equity to set aside fraudulently begotten judgments."  64 S.Ct at 1001.  And that "tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public institutions in which fraud cannot complacently be tolerated consistently with good order of society.  Surely, it cannot be that the preservation of the integrity of the judicial process must always wait upon the diligence of the litigants.  The public welfare demands that the agencies of justice be not so impotent that they must always be mute and helpless victims of deception and fraud."  64 S.Ct. at 1001.  There is no time limit on setting aside a judgment on this ground.  *Serzysko v. Chase Manhattan Bank*, C.A.2d 1972, 461 F. 2d 699.

[Nor may laches bar consideration of the matter.  *Toscano v. Commissioner of Internal Revenue*, C.A. 9th, 1971, 441 F. 2d 930, 936-937.  Nor "unclean hands": *Martina Theatre Corp. v. Schine Chain Theatres, Inc*., C.A.2d, 1960, 278 F. 2d 798, 801.  The focus, thus, is uniformly on the fraudulent conduct and its ill effects.]

## **Argument**

It is simply unfathomable that Stephen R. Mick did not know that his clients did not own the copyrights in any of the works at issue when he removed the state court

10

matter to federal court under the Copyright Act and sought attorneys' fees under the Copyright Act.  And it is not as if Mr. Mick remained silent or "withheld" comment on the question of ownership, rather he displayed before the court a host of bona fides and *unequivocally and repeatedly claimed copyright ownership*.

At each of these utterances, Mr. Mick's assurance of ownership was untrue. (Copyright is not something you can regain.  You either have copyright ownership by renewing the initial copyright registration 28 years after the initial registration,  -- or you do not.)   Mr. Mick's clients did not have ownership when Mr. Mick raised his credentials --and assured the court that they had, causing the court to order Mr. Mick's fees be paid by Emil Cadkin.

 It would not be until April 7, 2011, that Mr. Mick in conversation with Marty O'Toole confirmed that it had all along been a fraud on the court—that the works had long ago fallen into the public domain.  O'Toole inquired of Mick if the works had ever been renewed.  Initially, Mick ignored the question.  O'Toole asked again, and Mick ominously answered with another question: "Do you know what it means when there is no renewal?"  O'Toole replied, "Public Domain."  Mick then echoed this: "Public Domain."  Mick then said that "if you want to contact BMI and open that can of worms and tell them that your client's compositions are in the public domain that is up to you."  (Apparently suggesting that it was in all of our interests to keep this dirty little secret hidden.)

Cadkin then immediately commenced a copyright search to confirm this fraud and the search, indeed, confirmed Mr. Mick's statement that there had been no renewal. Declaration of Marty O'Toole, ¶ 5.

Such is stunning, shocking, and deplorable.   The *whole case* from removal to the last hearing had been a fraud.   There was never a sufficient basis to remove the

11

state court matter and claim an award of attorneys' fees as the copyright owner of works at issue as they had long been in the public domain.

It was a brilliant fraud on the court.

Indeed, fraud upon *many* federal courts.

## **Conclusion**

Were this court to find fraud upon this court, from removal of the state court complaint to the request and award of attorneys' fees predicated on the assertion that Defendants had ownership interest in the copyrights at issue and Plaintiffs did not, it is respectfully requested that this court vacate and set aside the award of attorneys' fees, award of costs and resulting fees, issue sanctions, and take whatever further measures it deems appropriate.

Dated: June 2, 2011                                          Respectfully submitted,

                                                            /S/
                                                    _____
                                                    Marty O'Toole
                                                    Law Office of Marty O'Toole
                                                    Attorney for Emil Cadkin, Lila
                                                    Cadkin and The Cadkin Trust

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>DECLARATION OF MARTY O'TOOLE</u>

I, Marty O'Toole, hereby declare as follows:

1.      I am an attorney at law duly admitted to practice before this Court and in all courts in the State of California.   I am the attorney for Plaintiffs in this action.  I was Plaintiffs' attorney on appeal to the Ninth Circuit on a related-matter.  I am also the Plaintiff Emil Cadkin's attorney in an ongoing California state court matter.

2.      Stephen R. Mick and I conferred on this motion, orally and by email, pursuant to L.R. 7-3, between May 27, 2011 and June 1, 2011.

3.      On April 7, 2011, I spoke with Stephen R. Mick, of Barnes & Thornburg LLP, formerly of Akin Gump Straus Hauer & Feld LLP, counsel for defendants Carlin Production Music and Carbert Music in this action, and counsel for Carlin America and Warner Chappell Music on an ongoing state court matter and this phone conversation, I asked Mr. Mick about the ownership of the compositions and music libraries that had been continually referred to by the parties as the "CB" or C&B" Music Library.  Mr. Mick initially said that he was able to find about half of the registrations for the compositions in this library and he pointed out that they were

13

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

registered by both Emil Cadkin and Harry Bluestone (hence the "C&B") way back in the 1950s.

4.     I then asked about renewals.   Mr. Mick went back into the history of the library and the nature of renewals before I asked again about whether there had been renewals.  Mr. Mick said that he had not been able to find any renewals and he asked, "Do you know what it means when there are no renewals?"  I replied, "Public Domain."  Mr. Mick echoed, "Public Domain."  Mr. Mick then said words to the effect:  "Well, if you want to contact BMI and tell them that your client is receiving money on composition in the public domain, well, that is on you, but I am not sure you want to open that can of worms."

5.     I then contacted Thompson Reuters and asked that they do a copyright search on three of the "books" that make up this library and lo and behold their report indicated that there had not been any renewal as is required to maintain a copyright 28 years after registration as was required before 1978.  Without the renewal these books would have fallen into the public domain in the 1980s.  Attached is a true and correct copy of the Copyright Reports attached as Exhibit A.

6.     I went down to the Central District Court and pulled the entire file on this case and found –as I had remembered—that Mr. Mick had repeatedly presented his bona fides – a first rate law firm, with able associates under Mr. Mick's direction, and

14

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

time and again he (and they) had told the district court and then the Ninth Circuit that his client was the rightful owners under the Copyright Act when all the while they apparently were not.   Attached is a true and correct copy of the Notice of Motion and Motions by Defendants Carlin Production Music and Carbert Music for an Award of Attorneys' Fees Pursuant to 17 U.S.C.  § 505 (w/o Exhibits), Defendant's Reply Brief of Defendants Carlin Production Music and Carbert Music in Support of Award of Attorneys fees Pursuant to 17 U.S.C. § 505 (w/o Exhibits), and Appellees' Answering Brief (to the Ninth Circuit), and Order Granting Defendants Carlin Production Music and Carbert Music's Motion for Attorneys' Fees Pursuant to 17 U.S.C. ¶ 505, attached as Exhibit B.

       7.     It may have been one of the great frauds on the court.  Judge Rafeedee was apparently quite ill; Magistrate Woehrle seemed to take issue with Mr. Mick for some of his representations, but perhaps because of his credentials, she allowed him the benefit of the doubt.  Judge Wardlaw was viscerally unhappy with Mr. Mick –and she had good reason to be --but I suppose that she too might not have fathomed that Mr. Mick might possibly have been less than forthcoming in his repeated assurances that his clients were the rightful owners under the Copyright Act.   Only Mr. Mick can now say when he first discovered that his clients did not own any interest in the copyrights at issue (and what actions he then took).

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT

1    I declare that the foregoing is true and correct under penalty of perjury under

2    the laws of the United States.   Executed on June 2, 2011 in Los Angeles, California.

3                                           /S/

4                                    Marty O'Toole

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO VACATE AWARD OF ATTORNEYS' FEES DUE TO FRAUD ON THE COURT